WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
CHRISTOPHER S. ATWOOD, IDAHO STATE BAR NO. 7013
ASSISTANT UNITED STATES ATTORNEY
TARA MALEK, IDAHO STATE BAR NO. 8709
SPECIAL ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ELIZABETH ANN GAYTAN,<br><br>    Defendant. | Case No. 1:15-cr-214-002-EJL<br><br>**RULE 11 PLEA AGREEMENT** |

Rev. November 2015 (General)

I.      **GUILTY PLEA**

    A.      **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the defendant, the attorney for the defendant, and the government[1] agree that the defendant will plead guilty to count one of the Superseding Indictment, which charges the defendant with conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846.

    This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement. Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this agreement, the government, under Federal Rules of Criminal Procedure 11(c)(1)(B), will recommend a specific sentence that falls within the applicable sentencing Guideline range.

    B.      **Oath.** The defendant will be placed under oath at the plea hearing. The government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

II.     **WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL**

    The defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offense charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

without having that held against the defendant. If the court accepts the defendant's guilty plea, there will be no trial.

### III. NATURE OF THE CHARGES

**A.  Elements of the Crime.** The elements of the crime of conspiracy to distribute controlled substances, as charged in count one, are as follows:

1. There was an agreement between two or more persons to distribute controlled substances; and

2. The defendant joined in the agreement knowing its purpose and intending to help accomplish that purpose;

**B.  Factual Basis.** If this matter were to proceed to trial, the government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

A cooperating individual (CI) informed law enforcement agents that Elizabeth Gaytan was distributing methamphetamine. At the direction of law enforcement agents, CI arranged to purchase methamphetamine from Gaytan. On January 8, 2015, an undercover police officer (UC) drove CI to Gaytan's residence to purchase methamphetamine. Once there, Gaytan told UC and CI that they would have to go meet her source. UC drove CI and Gaytan to a gas station and paid Gaytan $120. At the gas station, Gaytan met with a male later identified as Stacy Wilfong and then returned to UC's vehicle and provided the methamphetamine. The substance was later sent to be tested at Idaho State Police forensic laboratory. The laboratory confirmed the substance weighted approximately 1.75 grams and contained methamphetamine.

On January 12, 2015, UC purchased approximately 1 gram of methamphetamine from Gaytan for $120. The substance was later sent to be tested at Idaho State Police forensic laboratory. The laboratory confirmed the substance weighted approximately 1.07 grams and contained methamphetamine. On January 22, 2015, UC purchased approximately 1.5 grams of

methamphetamine from Gaytan for $200. The substance was later sent to be tested at Idaho State Police forensic laboratory. The laboratory confirmed the substance weighted approximately 1.56 grams and contained methamphetamine. On January 28, 2015, UC purchased approximately 5 grams of methamphetamine from Gaytan for $225.

On February 19, 2015, UC and a second undercover police officer (UC #2) went to Gaytan's residence to purchase additional methamphetamine from Gaytan. After arriving at her residence, Gaytan told the undercover officers that she had half of an ounce at her boss's house. At Gaytan's request, the undercover officers drove Gaytan to a residence in Nampa, Idaho, belonging to Wilfong. UC gave Gaytan $300 before Gaytan went inside the residence. When Gaytan returned from the residence she gave UC approximately one-quarter ounce of methamphetamine.

On February 26, 2015, UC purchased approximately 1 ounce of methamphetamine from Gaytan for $900. On March 5, 2015, UC purchased approximately one-half an ounce of methamphetamine from Gaytan for $525.

On May 12, 2015, Gaytan called UC and asked if UC needed any dope. UC agreed to purchase one ounce of methamphetamine from Gaytan. They agreed to meet at a gas station. Law enforcement agents conducting surveillance saw Gaytan leave Wilfong's residence and travel to the gas station. At the gas station, Gaytan sold UC approximately one ounce of methamphetamine in exchange for $850.

On August 6, 2015, Chief United States District Judge B. Lynn Winmill signed an order authorizing the interception of wire and electronic communications on Wilfong's telephone. On August 14, 2015, Gaytan called UC on the telephone. UC arranged to purchase one-quarter pound of methamphetamine from Gaytan for $2400. Gaytan then sent a text message to Wilfong's phone stating, "eye it's me Liz need 4 zips got cash." Gaytan then called Wilfong and

stated that she needed 4 zips of regular. Wilfong told Gaytan to come over. UC met with Gaytan and drove her to Wilfong's residence. UC paid Gaytan $2400. Gaytan went inside the residence and returned a short time later with a baggie containing approximately one-quarter pound of methamphetamine. Gaytan gave UC the methamphetamine. The substance was later sent to be tested at Drug Enforcement Administration (DEA) laboratory. The laboratory confirmed the substance contained 106 grams of actual methamphetamine.

The defendant admits that she became a member of the conspiracy knowing of its illegal objects and intending to help accomplish it.

The proceeds obtained by the defendant from the distribution of methamphetamine to the UC was $5,640. The defendant acknowledges and agrees the proceeds generated in the conspiracy was at least $10,000.

### IV. SENTENCING FACTORS

**A. Penalties.** Conspiracy to distribute controlled substances, a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846, as charged in count one, is punishable by:

1. a term of imprisonment of up to twenty years;
2. a term of supervised release of at least three years;
3. a maximum fine of $1,000,000, and a special assessment of $100.

**B. Supervised Release.** The court may impose a period of supervised release. No agreement exists as to the length of supervised release.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

**C.     Fines and Costs.** The court may impose a fine. No agreement exists as to the amount of the fine. The court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

**D.     Special Assessment.** The defendant will pay the special assessment before sentencing and will furnish a receipt at sentencing. Payment will be made to:

>     The United States District Court, Clerk's Office
>     Federal Building and United States Courthouse
>     550 West Fort Street, Fourth Floor
>     Boise, Idaho 83724.

**E.     Forfeiture.** The defendant understands that the court will, upon acceptance of the defendant's guilty plea, enter a forfeiture order as part of the defendant's sentence. The forfeiture order may include assets directly traceable to the offense, assets used in the commission of the offense, and substitute assets and/or a money judgment equal to the value of the property derived from, or involved in, the offense. The defendant agrees immediately to forfeit to the government the property set out in the forfeiture allegation of the superseding indictment and all property and property interests that constitute proceeds obtained or retained as a result of the offense, property intended for use or used to commit or to facilitate the commission of the offense, or property involved in the offense, including the following:

1.     <u>Cash Proceeds.</u> At least $10,000 and all interest and proceeds traceable thereto as proceeds of the offenses pleaded to and as to which the defendant is jointly and severally liable with co-defendants herein.

Pursuant to 21 U.S.C. § 853(p), the government will seek forfeiture of substitute assets, or "other properties," up to the value of the defendant's assets subject to forfeiture. The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

**Plea Agreement**                                  5                                  Rev. November 2015 (General)

      a.      the property cannot be located upon the exercise of due diligence;
      b.      the property has been transferred, sold to, or deposited with a third person;
      c.      the property has been placed beyond the jurisdiction of the court;
      d.      the property has been substantially diminished in value; and/or
      e.      the property has been commingled with other property that cannot be subdivided without difficulty.

"Other properties" includes property not otherwise forfeitable, pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982. Forfeiture of substitute assets shall not constitute an alteration in the defendant's sentence.

The defendant agrees that the forfeitures herein are separate from all other penalties, including monetary ones, and are also separate from restitution. The defendant agrees to consent to abandonment proceedings as to forfeitable property herein, and to the entry of orders of forfeiture for such property, including civil administrative forfeiture, civil judicial forfeiture, or criminal forfeiture. Finally, the defendant agrees to waive the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding: (a) notice of the forfeiture in the charging instrument, (b) advice regarding the forfeiture at the change-of-plea hearing, (c) announcement of the forfeiture at sentencing, and (d) incorporation of the forfeiture in the judgment. If this agreement is withdrawn for any reason, the defendant waives the right to contest all civil and administrative forfeitures that began before the withdrawal.

The defendant agrees to assist fully in the forfeiture of the foregoing assets, and to take all steps necessary to pass clear title to the forfeited assets to the government. The defendant will thus, for example, execute all documents necessary to transfer such title, assist in bringing any assets located outside of the United States within the jurisdiction of the United States, take whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture, etc.

The defendant will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, related civil forfeiture case, or petition for remission or mitigation of forfeiture. Further, the defendant will testify truthfully in any such proceeding. The defendant agrees to waive all challenges, on any grounds, to any forfeiture carried out in accordance with this agreement.

The defendant is the sole owner of the properties and property interests listed above, except as specifically set out herein. If the defendant is not the sole owner of these properties and interests, representations are false or inaccurate, the government may pursue any and all forfeiture remedies available at law or equity based on the violations covered by this agreement.

The defendant agrees that the forfeiture provisions of this agreement will survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this Agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if defendant had survived, and that determination shall bind the defendant's heirs, successors and assigns until the agreed forfeiture is collected in full. This includes any agreed money judgment amount. If the crime involved victims, then the defendant acknowledges and agrees that this agreement to disgorge the defendant's wrongfully-obtained criminal proceeds for the benefit of the defendant's victims is remedial in nature. Therefore, the defendant intends disgorgement to be completed regardless of any possible future abatement of defendant's criminal conviction. The court shall retain jurisdiction to settle any disputes arising from application of the foregoing forfeiture provisions.

## V. UNITED STATES SENTENCING GUIDELINES

**A. Application of Sentencing Guidelines.** The court must consider the USSG in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The court is not a party to this agreement. The agreement does not bind the court's determination of the USSG range. The court will identify the factors that will determine the sentencing range under the USSG. While the court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the court is not bound by this agreement, the parties agree to the recommendations and requests set forth below.

B. **Sentencing Guidelines Recommendations and Requests.**

1. Government's statements at sentencing. The government reserves the right to fully allocute at sentencing regarding any sentencing recommendation and to rely on any information in support of its recommendation regardless of whether the information is contained in the plea agreement or the presentence report.

2. Acceptance of Responsibility. If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a). The government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the government will withdraw or decline to make such a recommendation.

      3.    <u>Base Offense Level for Drug Quantity:</u> The parties agree that the defendant's base offense level pursuant to the drug quantity table under USSG § 2D1.1 is 30. The defendant agrees that the amount of methamphetamine that the government can prove was reasonably foreseeable to the defendant and that was within the scope of her agreement with her co-conspirators was at least 50 grams of actual methamphetamine but less than 150 grams of actual methamphetamine. This agreement is only as to the starting base offense level and is not intended to address any specific offense characteristics that may apply.

      4.    <u>Downward Departure or Variance Request by defendant.</u> Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government of the defendant's intent to seek a downward departure and the defendant's reasons and basis therefor, such notice to be provided not less than 21 days before the date set for sentencing.

## VI. WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

    A.    **Waiver:** In exchange for this agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution.

The defendant acknowledges that this waiver shall result in the dismissal of any direct appeal or collateral attack the defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this agreement and will allow the government to withdraw from the agreement and take other remedial action.

If the defendant believes the government has not fulfilled its obligations under this agreement, the defendant will object at the time of sentencing; further objections are waived.

B.   **Exceptions:**

1.   **Direct Appeal:** Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal if one of the following unusual circumstances occurs:

   a.   the sentence imposed by the court exceeds the statutory maximum;

   b.   the court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

   c.   the court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the court.

The defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

2.   **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the defendant shall retain the right to file a 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel.

## VII.   PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States probation office for use in preparing a presentence report. Failure to execute releases and provide information for the presentence report violates this agreement and relieves the government of its obligations in this agreement. Such failure and response by the government will not, however, constitute grounds for withdrawing the plea of guilty unless the government so requests. Providing materially false information will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1.

## VIII.   DISCLOSING FINANCIAL INFORMATION

The defendant agrees to disclose all of the defendant's assets and sources of income to the government, including all assets over which the defendant exercises or exercised direct or indirect control, or in which the defendant has had any financial interest. The defendant also agrees to

cooperate in obtaining any records relating to ownership of assets when sought by the government. The defendant agrees truthfully to complete a personal financial statement within fourteen days from the date the defendant signs this agreement. If the government provides a financial statement to be completed, the defendant agrees to complete the financial statement truthfully and accurately within fourteen days from the date the defendant signs this agreement or the date the financial statement is provided to the defendant or counsel, whichever is later. The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k) within seven days of the event giving rise to the changed circumstances. The failure timely and accurately to complete, sign, and update the financial statements as required herein, may constitute failure to accept responsibility under USSG § 3E1.1, as well as other things.

The defendant authorizes the government: (a) to obtain a credit report on the defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain financial records related to the defendant.

Before sentencing, defendant agrees not to dissipate any assets without the consent of both the government's financial litigation unit and the asset forfeiture unit. If any assets are sold, any sale proceeds received from sale of assets will be deposited with the clerk and, upon sentencing, paid toward any monetary penalties due as ordered in the judgment.

## IX.   NO RIGHT TO WITHDRAW PLEA

The defendant understands that the court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this agreement or the guilty plea, regardless of the court's actions.

X.  **CONSEQUENCES OF VIOLATING AGREEMENT**

    A.  **Government's Options.** If the defendant fails to keep any promise in this agreement or commits a new crime, the government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice. In addition, if the government determines after sentence is imposed that the defendant's breach of the agreement warrants further prosecution, the government may choose between letting the conviction under this agreement stand or vacating such conviction so that such charge may be re-prosecuted. If the government determines that a breach warrants prosecution before sentencing, it may withdraw from the agreement in its entirety.

The government's election to pursue any of the above options cannot be a basis for the defendant to withdraw the guilty plea made pursuant to this agreement.

    B.  **Defendant's Waiver of Rights.** If the defendant fails to keep any promise made in this agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense to which the defendant entered a plea of guilty or which were dismissed under this agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the defendant does not enter an acceptable plea, the government will move to continue the trial now set to allow the government adequate time to prepare. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XI. MISCELLANEOUS

**A.   No Other Terms.** This agreement is the complete understanding between the parties, and no other promises have been made by the government to the defendant or to the attorney for the defendant. This agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does not bind or obligate governmental entities other than that specified as the government in this agreement (i.e., the United States Attorney's Office for the District of Idaho). The government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the request of defendant' or counsel.

**B.   Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the defendant's notification of acceptance of this agreement no later than 5:00 p.m. on April 1, 2016.

## XII. UNITED STATES' APPROVAL

I have reviewed this matter and the agreement. This agreement constitutes a formal plea offer from the government. Any oral discussions with the defendant and defense counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

_____          4/5/16
CHRISTOPHER S. ATWOOD                   Date
Assistant United States Attorney

## XIII. ACCEPTANCE BY DEFENDANT AND COUNSEL

    I have read and carefully reviewed every part of this agreement with my attorney. I understand the agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the government, including any Assistant United States Attorney, concerning the plea to be entered in this case. I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including enter a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____          4/5/2016
ELIZABETH ANN GAYTAN                    Date
Defendant

    I have read this agreement and have discussed the contents of the agreement with my client. The agreement accurately sets forth the entirety of the agreement. I have conveyed all

Plea Agreement                    14                    Rev. November 2015 (General)

To: Page 5 of 5    4/5/2016 14:31:02 MDT    18008816219 From: Smith Horras P.A.

Case 1:15-cr-00214-EJL Document 136 Filed 04/06/16 Page 16 of 16

written offers from the government to the defendant pursuant to *Missouri v. Frye*, 132 S. Ct. 1399, 1408-09 (2012). I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States. I concur in my client's decision to plead guilty as set forth above.

_____          4/5/2016
ELLEN NICHOLE HORRAS SMITH                Date
Attorney for the defendant